# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-08-3287 |
| STENA DRILLING LIMITED, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND OPINION

In this patent infringement suit, the plaintiff, Transocean Offshore Deepwater Drilling, Inc., alleges that the defendants, Stena Drilling Limited ("Stena"), Stena Drillmax Limited ("Stena I"), and Stena Drillmax III Limited ("Stena III") (collectively, the "Stena defendants"), have infringed four Transocean patents relating to "multi-activity" offshore exploration and drilling. The alleged infringement arises from the design of dual-activity drillships known as the Stena DrillMAX class of rigs. The amended complaint alleges that the Stena Drillmax rigs are covered by the apparatus claims of Transocean's patents. In the amended complaint, Transocean alleges infringement relating to two rigs: the Stena DrillMAX I and the Stena DrillMAX III. The Stena DrillMAX I has been operating in the Gulf of Mexico and Brazil. Transocean alleges that Stena infringed by "inducing the sale, importation and use" of this rig. The Stena Drill MAX III is currently under construction in Korea. Stena III contracted with the Hess Corporation to provide the Stena DrillMAX III for

offshore drilling operations for five years.

Stena III has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Transocean's infringement claim with respect to the Stena DrillMAX III drillship. Stena III argues that Transocean's amended complaint fails to allege any act of infringement under § 271(a).  Stena III argues that Transocean fails to plead a sale – as opposed to a contract to provide the drilling services of the offshore drilling vessel to the Hess Corporation, an oil and gas operator – and fails to plead any act in the United States.  (Docket Entry No. 13).  Transocean responded, (Docket Entry No. 15), arguing that by alleging a "sale," the amended complaint sufficiently alleged that Stena III made an "offer to sell" the DrillMAX III vessel under §271(a).  In the alternative, Transocean moved for leave to file a second amended complaint clarifying that it alleges not only an infringing "sale" but an "offer to sell" and adding a claim for a declaratory judgment of infringement.  (Docket Entry No. 15, Ex. 2 (Proposed Second Amended Complaint)).  Stena III replied, arguing that Transocean's proposed second amended complaint fails to allege an "offer to sell" or any other act of infringement with respect to the DrillMAX III and that the proposed declaratory judgment complaint is premature.  (Docket Entry No. 16).

Based on a careful review of the pleadings, the motion, the response, the reply, and the applicable law, this court grants Stena III's motion to dismiss to the extent it is based on the argument that merely alleging a sale is insufficient to allege an "offer to sell."  This court grants Transocean's motion for leave to amend to clarify that it is alleging an "offer to sell" under § 271(a) and to assert a claim for declaratory relief.  The reasons for these rulings are

2

explained below.

## I.     Background

Transocean and the Stena Defendants are drilling contractors that provide drillships and drilling services to oil and gas operators.  According to the facts alleged in the amended and proposed second amended complaints, Transocean is a Delaware corporation with its principal place of business in Houston, Texas.  Stena Drilling Limited, Stena Drillmax Limited, and Stena Drillmax III are foreign corporations conducting business in Houston, Texas.  (Docket Entry No. 5, at ¶¶ 1-4).[1]  On March 9, 2004, Transocean was assigned four United States patents: U.S. Patent No. 6,047,781 (the '781 Patent), issued April 11, 2000, U.S. Patent No. 6,056,071 (the '071 Patent), issued May 2 , 2000, U.S. Patent No. 6,068,069 ('069 Patent), issued May 30, 2000, and U.S. Patent No. 6,085,851 (the '851 Patent), issued July 11, 2000.  (*Id.*, at ¶¶ 8-12).  The patents all related to a "Multi-Activity Offshore Exploration and/or Development Drilling Method and Apparatus."  (*Id.*, at ¶¶ 8-11).  The amended complaints allege that the Stena defendants have built, and are continuing to build, a line of dual-activity drillships known as the Stena DrillMAX class of rigs that include design features covered by apparatus claims of Transocean's patents.  (*Id.*, at ¶ 13).

In 2006, Stena Drillmax Limited contracted with Repsol Exploracion, SA to provide the "Stena Drillmax I," for offshore drilling operations in the Gulf of Mexico.  (*Id.*, at ¶14).  Stena Drillmax Limited and Stena Drilling Limited operated the DrillMAX I in the U.S. Gulf

---

[1] The Stena Defendants deny that Stena Drillmax Limited and Stena Drillmax III conduct business in Houston, Texas.  (Docket Entry No. 11, at ¶¶ 3, 4).  This denial is irrelevant for the purposes of determining whether to dismiss Transocean's claims against Stena Drillmax III on 12(b)(6).

of Mexico.  (*Id.*, at ¶ 15).[2]  The Stena Defendants have not moved to dismiss Transocean's claims that Stena and Stena I have directly infringed Transocean's patents.  The amended complaints allege that Stena not only sold or offered to sell the Stena DrillMAX I but also imported and used it.  The Stena Defendants acknowledge that the allegation of the actual use of the Stena DrillMAX I drillship in the Gulf of Mexico states a claim under § 271.  (Docket Entry No. 5, at ¶ 18; Docket Entry No. 16 ,at 2).

The amended complaints allege that the Stena Defendants are building a second dual-activity rig, known as the Stena DrillMAX III ("DrillMAX III").  That drillship is still under construction outside the United States.[3]  The amended complaints allege that in 2008, Stena III contracted with the Hess Corporation, a U.S. company, "to provide the Stena DrillMAX III . . . for offshore drilling operations under a five-year contract in the U.S. Gulf of Mexico."  (Docket Entry No. 15, Proposed Second Amended Complaint, at ¶ 17).  The critical issue in this motion to dismiss and motion for leave to amend is whether the allegation of this contract states a claim for an actionable "offer to sell" the Stena DrillMAX III.

On June 7, 2007, Transocean notified the Stena Defendants that their activities infringed Transocean's patents.  (*Id.*, at ¶ 17).  This lawsuit and the challenge to the claim against Stena III followed.

---

[2] At the initial conference, counsel for Stena revealed that the Stena DrillMAX I has left the Gulf of Mexico and is currently en route to Brazil.  The parties agree that this does not affect the infringement claim or the issues raised in the pending motion.

[3] The amended complaint states only that Stena "has built and is continuing to build dual-activity drillships."  (Docket Entry No. 5, at ¶ 13).  Stena asserts that "Transocean is aware that the Stena Drillmax III drillship is still under construction outside the United States."  (Docket Entry No. 13 at 4).  Transocean does not dispute that the DrillMAX III is under construction outside the United States.

## II.     The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).  The Supreme Court recently overruled the part of *Conley v. Gibson*, 355 U.S. 41 (1957) holding that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007), the Court held that a complaint fails to comply with Rule 8 if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65); *Sonnier*, 2007 WL 4260892, at *1 (quoting *Twombly*, 127 S.Ct. at 1965).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 127 S. Ct. at 1966) (quotations omitted).  Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those

5

conclusions cannot reasonably be drawn from the facts alleged.  *See Twombly*, 127 S. Ct. at 1967-70.

In *Ashcroft v. Iqbal*, --- S. Ct. ---, No. 07-1015, 2009 WL 1361536 (May 18, 2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*.  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at *12 (citing *Twombly*, 550 U.S. at 555).  *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

When a plaintiff's complaint must be dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *Great Plains Trust Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation omitted); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. R.K. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

6

### III.    Analysis

A patent is infringed by "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271(a).  Transocean must allege facts that make it plausible to conclude that Stena III has "sold" or "offered to sell" the DrillMAX III in the United States.  In the amended and proposed second amended complaints, Transocean alleged that the Stena defendants have built and are continuing to build DrillMAX drillships that are covered by apparatus claims of the Transocean patents and that Stena Drillmax III Limited has contracted with Hess Corporation to "provide the DrillMAX III . . . for offshore drilling operations under a five year contract in the U.S. Gulf of Mexico."  (Docket Entry No. 15, Proposed Second Amended Complaint at ¶ 17).

Stena III is correct that the amended complaint does not support that Transocean has made an actionable "sale" of the DrillMAX III or "actively induced" a "sale" of the DrillMAX III.  "[A] 'sale' presupposes not merely an agreement to sell, but performance of that agreement."  *Quality Tubing Inc. v. Precision Tube Holdings Corp.*, 75 F.Supp.2d 613, 621 (S.D. Tex. 1999).  "[N]either intent nor preparation to sell constitute[] infringement."  *Rotec Industries, Inc. V. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) (quoting *Laitram Corp. V. Cambridge Wire Cloth Co.*, 919 F.2d 1579, 1583 (Fed. Cir. 1990)).  No infringement liability arises from a party merely "contracting to make infringing devices, or even beginning construction of infringing devices."  *Id.*  In both the amended and proposed amended complaints, Transocean alleged only that the Stena DrillMAX III is still under

construction outside the United States.  Stena III has contracted with Hess Corporation to provide the provide the DrillMAX III for offshore drilling operations for a five-year period, in the Gulf of Mexico.  Entering into a contract to sell a product that is still under construction and has never entered the United States, without more, is not a "sale" under § 271(a).  *See Quality Tubing*, 75 F.Supp.2d at 621 ("The negotiation and execution of a contract to sell is not, standing alone, a sale that is an act of infringement under section 271(a)."). Liability under § 271(b) requires that a defendant "actively induce" direct infringement of a patent by "actively and knowingly aiding and abetting another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 667 (Fed. Cir. 1988). Neither the amended nor proposed second amended complaint alleges a claim for inducing an infringing sale.

Transocean moves for leave to amend to plead expressly that the contract between Stena III and Hess Corporation to provide the DrillMAX III for offshore drilling operations under a five-year contract in the Gulf of Mexico is an "offer to sell" the DrillMAX III rig in the United States.  Stena III opposes the amendment on the basis of futility.  Stena III argues that an "offer to sell" must contemplate a "sale" that transfers title or possession.  Stena III's argument, rephrased in *Twombly*/*Iqbal* terms, is that the contract alleged in the proposed second amended complaint is, as a matter of law, not an "offer to sell" the DrillMAX III that could plausibly state a claim for relief under § 271(a).  (Docket Entry No. 16, at 3–4, 8). Stena III argues that the alleged facts do not make it plausible to find that Stena III made an "offer to sell" the DrillMAX III "within the United States."  (Docket Entry No. 16, at 7).

To decide whether Transocean has properly stated a claim that Stena III's five-year contract to provide the DrillMAX III was an "offer to sell…within the United States" under § 271(a), this court must determine, first, whether the allegations, taken as true and viewed in the light most favorable to Transocean, make it plausible to conclude that there has been an "offer to *sell*" the DrillMAX III and, second, whether such allegations support that the alleged "offer for sale" occurred "*within the United States*."

### A.    "Offer to Sell"

The United States Patent Act is not limited to upholding patentees' rights to enjoin or obtain damages for completed sales of infringing products within the United States.  In 1994, Congress amended § 271(a) to add the words "offers to sell" to the list of infringing acts.  As amended, § 271(a) states: "whoever without authority makes, uses, *offers to sell*, or sells any patented invention, within the United States...infringes the patent."  35 U.S.C. § 271 (a) (emphasis added).  A defendant's activities before an actual sale may constitute patent infringement and patentees need not wait until there is an actual sale to sue.  A patentee can seek injunctive relief and any damages that may have accrued due to a defendant's "offer to sell" a patented device.  *See Rotec Indus.*, *Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1260 (Fed. Cir. 2000).  The sale contemplated by an "offer to sell" must occur before the patent expires.  35 U.S.C. § 271(i).  Beyond this requirement, Congress provided no further guidance as to what constitutes an actionable "offer to sell" under § 271(a), leaving the statutory construction to the courts.

9

In *3D Systems*, *Inc. v. Aarotech Laboratories*, *Inc.*, 160 F.3d 1373 (Fed. Cir. 1998), the Federal Circuit interpreted "offer to sell" in the context of determining whether an out-of-state defendant's contacts with the forum state satisfied the minimum contacts required for personal jurisdiction. The court held that an unauthorized "offer to sell" a patented invention within the United States provides the patentee a separate cause of action before any actual sale. *Id.* at 1378–79.  The court noted that the 1994 amendment adding "offers to sell" to § 271(a) was intended to prevent would-be infringers from "generating interest in a potential infringing product to the commercial detriment of the rightful patentee" and that the "prohibition added to § 271(a) would be hollow indeed" if the defendants could make such offers without triggering the statute. *Id*. at 1379. The court concluded that the defendants had made an "offer to sell" allegedly infringing equipment "within the United States" when they sent promotional letters, order solicitations, and price quotations from their headquarters in Virginia to companies in California.

The Federal Circuit has since clarified that an "offer to sell" is to be interpreted "according to its ordinary meaning in contract law, as revealed by traditional sources of authority."  *Rotec Indus.*, *Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000). Interpretations of "for sale" under § 102(b), which provides that a patent is invalid if the invention was "on sale within the United States" more than one year prior to filing, are a useful guide for interpreting what conduct rises to the level of offers to sell.  *Id.*  While recognizing that the two sections of the Patent Act are based on distinct policy rationales, the Federal Circuit has held that because "[b]oth sections invoke traditional contractual analysis"

it is appropriate to use § 102(b) jurisprudence to interpret the "sale" and "offer to sell" phrases in § 271(a).  *See Rotec Indus.*, 215 F.3d at 1254–55 ("[the 102(b) analysis] is not divergent from our § 271(a) analysis, because an offer for sale, whether made before or after a patent is applied for, or after it is granted, requires no more than a commercial offer for sale.").

In line with traditional contract analysis, an "offer to sell" requires an "offer."  A defendant "must 'communicate[ ] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  *MEMC Electronic Materials*, *Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (quoting *Rotec Indus.*, 215 F.3d at 1257) (quoting Restatement (Second) of Contracts § 24 (1979))); *see also Group One*, *Ltd. v. Hallmark Cards*, *Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance . . . constitutes an offer for sale under § 102(b).").

Additionally, the alleged offer must contemplate a commercial transaction that rises to the level of a "sale" of the patented invention that would infringe the patent.  *See Cybiotronics*, *Ltd. v. Golden Source Electronics Ltd.*, 130 F.Supp.2d 1152, 1170 (C.D. Cal. 2001) ("[L]iability under Section 271(a) does not extend to 'offers to sell' which do not contemplate actual 'sales' of goods to be consummated within the United States."); *HollyAnne Corp. v. TFT, Inc*., 199 F.3d 1304, 1309–10 (Fed. Cir. 1999) ("[T]o be an offer to sell for purposes of section 271(a) the alleged offer must include more than a mere

invitation to accept a gift . . . . [T]he offer [must] include . . . the hallmark of a potential commercial transaction . . . .").  To determine whether an offer to sell is actionable under § 271(a), the court must "look at the facts concerning the contemplated sale itself, not merely the offer standing alone . . . It requires a determination as to whether the sale offered will potentially infringe a United States patent." *Quality Tubing*, 75 F.Supp.2d at 624.

Stena III argues that there was no "offer to sell" the DrillMAX III because Stena III's contract with the Hess Corporation to provide the DrillMAX III for offshore drilling operations, in the Gulf of Mexico, for a five-year period, did not transfer title or possession from Stena III to Hess.  Stena III argues that the amended and proposed second amended complaints do not allege a "sale" of the drillship, as a matter of law.  (Docket Entry No. 16, at 5).  Transocean responds that the case law recognizes that "sales" for the purpose of § 271(a) are not limited to transactions that transfer title but may include other relationships, such as licenses, leases, or rentals.  The case law interpreting what can constitute a sale and therefore an offer to sell  supports Transocean's argument.

In *In re Kollar*, 286 F.3d 1326 (Fed. Cir. 2002), the Federal Circuit examined whether a license transferring less than full title to a product could be a "commercial offer for sale" under § 102(b).  *Id.* at 1330.  The plaintiff sought a patent for a process described as "a low-cost method of producing various dialkyl peroxides, such as di- tert-butyl peroxide, which in turn can be used to make, inter alia, ethylene glycol." *Id.*  The United States Patent and Trademark Office found the claimed process unpatentable because of the on-sale bar of § 102(b).  On appeal, the court distinguished an assignment of rights to an invention, such

12

as a license, from a full "sale" of the invention, but held that in some cases a commercial transaction "arranged as a 'license' or a 'lease' of a product or a device" may be "tantamount to a sale because '[t]he product is . . . just as immediately transferred to the 'buyer' as if it were sold." *Id.* at 1331 n.3 (quoting *Group One*, 254 F.3d at 1053)).  The court also held that selling "a product made by the claimed process would constitute [] a sale because [the seller] is commercializing the patented process in the same sense as would occur when the sale of a tangible patented item takes place."  *Id.* at 1333.  In that case, the court determined that there had been no sale because the transaction merely amounted to a transfer of technical information about the claimed process and granted the licensee rights to practice the method under future patents as well as sell resulting products that had not yet been developed.  *Id.* at 1330.  The transaction was not a sale because "development of the claimed process would have to occur before the process [was] successfully commercialized."  *Id.* at 1333.  The "right to commercialize" the invention granted to another party in the form of a license was insufficient to bar the claims of the plaintiff's patent application under § 102(b).  *Id.* at 1331; s*ee also Elan Corp. v. Andxr Phrmaceuticals, Inc*, 366 F.3d 1336, 1341 (Fed. Cir. 2004) (finding that "an offer to enter into a license under a patent for future sales of the invention covered by the patent *when and if it has been developed*" was not a sufficiently definite "offer to sell" the invention under §102 (b), but noting that if "[the patentee] had simply disguised a sales price as a licensing fee it would not avoid triggering the on-sale bar") (emphasis added); *Mas-Hamilton Group v. LGard*, Inc., 156 F.3d 1206, 1217 (Fed. Cir.

1998) (holding that the conveyance of "production rights in the invention" or the "exclusive right to market the invention" is not "a sale or offer to sell the devices themselves").

In *Minton v. National Ass'n of Securities Dealers*, *Inc.*, 336 F.3d 1373 (Fed. Cir. 2003), the Federal Circuit considered whether a lease could be a sale under § 102(b).  A little over one year before he applied for a patent, the plaintiff leased a computer program and telecommunications network to a securities brokerage firm.  This program and network, which performed similarly to the methods claimed in the patent application, allowed individuals to post offers to trade securities as well as to select and reply to posted offers to execute trades.  The court held that the lease was an "offer for sale" within the meaning of the § 102(b) on-sale bar because the lessor "conveyed [to the lessee] a fully operational computer program implementing and thus embodying the claimed method[,]" along with a product warranty.  *Id.* at 1378; *see also Trading Tech. Int'l*, *Inc. v. eSpeed*, *Inc.*, 513 F.Supp.2d 969, 973 (N.D. Ill. 2007) (holding that the lease or rental of computer trading software for 18 months was a "sale" under § 102(b)).

The *In re Kollar* line of cases shows that an agreement to transfer rights to use a product may be arranged as a license or lease but nonetheless constitutes a "sale" or "offer for sale" under § 102(b).  The crucial element identified by these cases is that the transaction contemplates delivery and possession of a completed invention.  *See In Re Kollar*, 286 F.3d at 1331 n.3; *Minton*, 336 F.3d at 1378.  The requisite commercialization for a "sale" under § 102(b) is not present where the invention is not yet completed and the transaction or license merely gives a party the "right to commercialize" the invention.  *See In Re Kollar*, 286 F.3d

at 1331.  The emphasis on transfer of possession of a product from buyer to seller is consistent with courts' determinations of what types of commercial transactions rise to the level of a "sale" for purposes of patent infringement.  *See Quality Tubing*, 75 F.Supp.2d at 621.

In this case, the issue is whether the facts alleged make it plausible to conclude that Stena III made an "offer to sell" the DrillMAX III to the Hess Corporation.  The parties did not attach the contract between Stena III and Hess Corporation; this court is limited to the facts alleged in the amended complaints.  The amended and proposed second amended complaints state that "[i]n 2008, Stena DrillMAX III Limited contracted with the Hess Corporation to provide the Stena DrillMAX III . . . for offshore drilling operations under a five year contract in the Gulf of Mexico."  (Docket Entry No. 5, at ¶ 16).  The complaints allege that Stena III has entered into a contract with the Hess Corporation that when the DrillMAX III is completed, it will be provided to the Hess Corporation to use for drilling in the Gulf of Mexico for a five-year period.  In addition, the contract will be consummated well before Transocean's patents expire in 2020.  (*Id.*, at ¶¶ 8–11).

Stena III contends that the allegations do not show an offer to sell the DrillMAX III to the Hess Corporation because the contract did not transfer of title and possession of the drillship to Hess.  (Docket Entry No. 16, at 3–4).   Instead, according to Stena III, it has "offered to sell the use of the Stena DrillMAX III Drillship."  (Docket Entry No. 13, at 7). Stena III distinguishes *In re Kollar, Group One,* and *Trading Tech* decisions on the basis that the five-year contract with Hess Corporation is a contract for drilling services under which

15

neither title nor possession passes to Hess.  (Docket Entry No. 13, at 5).  According to Stena III, "Stena III (and Transocean for that matter) is not in the business of *selling* offshore drilling vessels, but rather is in the business of contracting to provide the drilling services of its offshore drilling vessels to oil and gas operators.  Under such a drilling contract, neither title nor possession of the drilling vessel passes to the oil and gas operator (e.g. Hess).  Such an arrangement is vastly different than the licensing of computer software . . . the possession of which must necessarily pass to the software user."  (Docket Entry No. 16, at 5) (emphasis in original).

Transocean's pleadings, however, contradict Stena III's assertion that under the contract the Hess Corporation will not take possession of and use the DrillMAX III drillship.  In the amended complaints, Transocean alleged that "Stena DrillMAX III Limited contracted with Hess Corporation to provide the Stena DrillMAX III . . . for offshore drilling operations under a five year contract in the Gulf of Mexico."  (Docket Entry No. 5, at 5).  According to Transocean, the contract provides the Hess Corporation the right to "possess and use" the DrillMAX III and such a transfer of rights amounts to an "offer to sell" the drillship, similar to a temporary software license or car lease.  (Docket Entry No. 15, at 2).

The amended complaints allege a contract between the Hess Corporation, an oil and gas operator, and Stena III, the drillship owner, under which the Hess Corporation will possess and use the ship for five years.  Under the facts alleged, Stena III's contract with Hess resembles a license or rental agreement under which possession is transferred for an extended period to a licensee or lessee who will use the product.  Such long-term

16

arrangements may be sales under § 102(b) and therefore § 271(a). *See Minton,* 336 F.3d at 1378 (long-term lease of computer program and telecommunications network was a "sale" under § 102(b)); *Trading Tech. Int'l, Inc.,* 513 F.Supp.2d at 973 (18-month lease of computer program was a "sale" under § 102(b)). The facts alleged make the existence of an "offer to sell" plausible and preclude dismissal.

Stena III cites an unpublished opinion in *Transocean Offshore Deepwater Drilling Inc. v. Stena Drilling Limited,* Civ. Action No. H-07-2797, in which the court dismissed a similar complaint on the basis that a drilling contract is not a sale because the oil operator never has an interest in or possession of the drilling contractor's equipment. 2008 WL 2065808, at *1 (S.D. Tex. May 13, 2008). The allegations in this case do not permit this court to reach that same conclusion as a matter of law. To the contrary, the factual allegations in this case, taken as true, show that the oil operator will possess and use the drilling contractor's equipment for a five-year period. In addition, in that case, the court did not examine the case law under § 102(b) or § 271(a) that indicates the range of transactions held to constitute a "sale" or "offer to sell" for the purpose of an infringement claim.

Transocean alleged in the amended complaints that the DrillMAX III design infringes the apparatus claims of the Transocean patents. (Docket Entry No. 5, at ¶ 13) ("Stena has built and is continuing to build dual-activity drillships referred to as the Stena DrillMAX class of rigs. On information and belief, the design of the drillships are covered by apparatus claims of the Transocean patents."). The DrillMAX I, from the same line and design of dual-activity rigs as the DrillMAX III, is already completed and fully operational. (Docket Entry

17

No. 5, at ¶ 15).  Unlike the agreements in *In re Kollar*, 286 F.3d at 1330, and *Elan*, 366 F.3d

at 1341, the allegations about Stena III's contract with the Hess Corporation make it plausible

to conclude that for the purpose of §271(a), the contract is a sale of rights to possess and use

an existent embodiment of the patented invention, not a license to develop or practice future

products covered by the patents.  The facts as pleaded make it plausible to conclude that

Stena III made an actionable "offer to sell" the patented invention to the Hess Corporation.

### B.     "Within the United States"

Section 271(a) covers patent infringement that occurs within the United States.  *See*

*Pellegrini v. Analog Devices*, *Inc.*, 375 F.3d 1113, 1117 (Fed. Cir. 2004) ("[As] the U.S.

Supreme Court explained nearly 150 years ago in *Brown v. Duchesne*, 60 U.S. (19 How.)

183, 15 L.Ed. 595 (1856), . . . the U.S. patent laws 'do not, and were not intended to, operate

beyond the limits of the United States.'"); *Rotec Indus.*, *Inc. v. Mitsubishi Corp.*, 215 F.3d

1246, 1251 (Fed. Cir. 2000) ("[E]xtraterritorial activities . . . are irrelevant to the case before

us, because 'the right conferred by a patent under our law is confined to the United States and

its territories, and infringement of this right cannot be predicated on acts wholly done in a

foreign country.'") (quoting *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641,

650, 35 S.Ct. 221, 59 L.Ed. 398 (1915)).  In determining whether a defendant has made an

"offer to sell" a patented invention under § 271(a), the court must consider only those

activities that occur within United States territory.  *See Rotec Indus.*, 215 F.3d at 1257

(granting summary judgment of noninfringement when the final offer to sell an allegedly

infringing system was made in China and the system would not be installed or used in the

United States).

Stena III contends that "there is absolutely no allegation in Transocean's Amended Complaint that Stena III has committed any infringing act within the United States. This is hardly surprising in light of the fact that the Stena DrillMAX III drillship is still under construction outside the United States." (Docket Entry No. 13, at 4). Transocean responds that "[t]he offer made by Stena III and accepted by Hess is for use [of the DrillMAX III] within United States territory" and "the contemplated sale will be consummated within the United States." (Docket Entry No. 15, at 6).

The Federal Circuit has held that at least some essential activities surrounding a proposed sale must occur in the United States. In *MEMC Electronic Materials*, *Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005), the Federal Circuit cited *Rotec* for proposition that it is "well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *Id.* at 1375–77. The court granted summary judgment for the defendant because all the "essential activities" attendant to the sale of the allegedly infringing product – including presale negotiations, contracting, and performance – took place outside the United States. *Id.* Federal Circuit cases do not, however, define what activities attendant to an offer of sale must occur within United States territory.

Some courts have held that the performance of the sale contemplated by an offer to sell, including the essential components of delivery and possession, must occur within the United States. *See Quality Tubing*, *Inc. v. Precision Tube Holdings Corp.*, 75 F.Supp.2d 613,

625 (S.D. Tex. 1999) (holding that "contracting, in the United States, to manufacture, sell, and deliver a[n allegedly infringing] product in Scotland and Norway, for use in Norway[,]" was not an act of infringement under § 271(a)); *Semiconductor Energy Laboratory Co. Ltd. v. Chi Mei Optelectronics Corp.*, 531 F.Supp.2d 1084, 1111 (N.D.Cal. 2007) ("[A]n 'offer of sale' may constitute direct infringement only if the contemplated sale is to take place within the United States."); *Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F.Supp.2d 388, 406–07 (S.D.N.Y. 2007) ("[P]laintiff's 'offer to sell' theory of liability must . . . fail because the sales contemplated by the offer to sell . . . were intended to occur outside the United States, and indeed did occur outside the United States."); *Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F.Supp.2d 1152, 1171 (C.D. Cal. 2001) ("An 'offer to sell' made *within* the United States that contemplates a sale of goods *outside* of the United States is not within the permissible scope of liability for 35 U.S.C. § 271(a).") (emphasis in original).  These decisions, that an "offer to sell" must contemplate a sale that will eventually occur within the United States, are consistent with the purpose behind Congress's addition of the "offer to sell" form of infringement — to prevent would-be infringers from "generating interest in a potential infringing product to the commercial detriment of the rightful patentee."  *See 3D Systems*, 160 F.3d at 1379.  As one court explained, the relevant location for an "offer to sell" under § 271(a) must be where the patentee might potentially suffer economic loss, which "occurs to the patent holder *at the place where the infringing sale is made* because the patent owner loses business there."  *See Beverley Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994) (emphasis added).

20

Other courts have held that the sale contemplated by an "offer to sell" under § 271(a) need not occur within the United States as long as the offer occurred in the United States. *See Wesley Jessen Corporation v. Bausch & Lomb, Inc*., 256 F.Supp. 228, 233–34 (D. Del. 2003) (holding that "the sale contemplated by the "offer to sell" need not take place in the United States or be intended to take place in the United States for there to be infringement because of the "offer to sell[,]" and finding that an unauthorized offer, made in the United States, to sell infringing products to an overseas buyer was made in violation of § 271(a) and warranted further discovery); *see also Halmar Robicon Group Inc. v. Toshiba Int'l Corp*., 53 U.S.P.Q.2d 1501, 1503–04 (W.D. Pa. 1999) (denying defendant's motion for summary judgment of noninfringement because the offer of sale was made in the United States even though the product was manufactured and sold outside the United States).

Under either of these approaches, the allegations in the amended complaints make it plausible to conclude that Stena III's contract with the Hess Corporation contemplates a "sale" of the DrillMAX III within the United States.  Transocean alleges that "[i]n  2008, Stena DrillMAX III Limited Contracted with Hess Corporation to provide the Stena DrillMAX III . . . *for offshore drilling operations* under a five year contract *in the Gulf of Mexico*."  (Docket Entry No. 5, at ¶16; Docket Entry No. 15, Second Amended Complaint, ¶ 17) (emphasis added).  The Stena Defendants argue that the Hess Corporation contract does not require use of the Stena DrillMAX III drillship exclusively in the Gulf of Mexico, and that they are "without sufficient information to know whether the Stena DrillMAX III will be used in the Gulf of Mexico, as it is not known when or if the Stena DrillMAX III drillship

will operate in the Gulf of Mexico as that vessel is still being constructed and will not be ready for operations until late 2009." (Docket Entry No. 11, at ¶ 16). But the amended complaints allege that the contract is for drilling operations for five years "in the U.S. Gulf of Mexico." Under the case law, the allegation that the contract is for drilling in the United States is sufficient to state a claim that the "sale" contemplated by the "offer to sell" the DrillMAX III to the Hess Corporation will occur in United States territory.

## IV. Conclusion

Stena III's motion to dismiss the amended complaint is granted in part. The motion for leave to amend to file the second amended complaint is granted. The rulings are without prejudice to the reassertion of similar arguments in a motion for summary judgment, if appropriate, after discovery.

SIGNED on June 22, 2009, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge